**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-01309-001-TUC-RM (EJM) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Marivel Cantu-Madril, et al., | |
| Defendants. | |

Pending before the Court is Defendant Marivel Cantu-Madril's Motion to Suppress. (Doc. 81.) The government has responded. (Doc. 83.) Oral argument on the Motion to Suppress was held on November 14, 2019, at which time the Court took the matter under advisement. For the following reasons, the Motion will be denied.

**I.  Background**

Defendants Marivel Cantu-Madril and Richard Madril, wife and husband, were charged by superseding indictment on January 16, 2019 with conspiracy to commit the following crimes: forgery of judicial signatures, use and possession of a counterfeit seal of the United States, mail fraud, and wire fraud. (Doc. 28.) Defendant Cantu-Madril was additionally charged with one count of mail fraud, one count of wire fraud, two counts of forgery of judicial signatures, and five counts of possession of counterfeit seals of the United States. (*Id*.) The charges arise from Defendants' law practice[1] specializing in immigration and criminal defense law. (*Id*.)

---
[1] The Government maintains that Madril and Cantu-Madril operated a joint practice. The Defendants maintain that they operated separate practices.

On October 11, 2016, federal investigators obtained a search warrant from United States Magistrate Judge Jacqueline M. Rateau to search "the law office of Marivel Cantu-Madril" located in "Suite E" of the office building at 890 West Grant Road, Tucson, Arizona, for evidence of the alleged crimes. (Doc. 83.) The search warrant was executed on October 12, 2016. (*Id.*) Investigators seized a substantial amount of evidence from the office. (*Id.*)

## II. Motion to Suppress

Defendant Cantu-Madril asks the Court to suppress evidence seized from Suite D of the law office. (Doc. 81.) Cantu-Madril avers that her law office was located exclusively in Suite D of the office building at 890 West Grant Road. (*Id.*) Cantu-Madril contends that the investigating agents had no lawful authority to search Suite D because the search of Suite D was outside the scope of the search warrant and the warrant failed to identify the "particular place" to be searched. (*Id.*) Cantu-Madril maintains that she operated her office and law practice in Suite D, completely separate from her husband's office and law practice in Suite E. (*Id.*) Defendant Richard Madril has not joined the Motion to Suppress.

The Government opposes suppression of evidence seized during execution of the search warrant, arguing: (1) the evidence shows that Cantu-Madril's law practice in fact extended to Suite E[2]; (2) the Motion to Suppress is unsupported by an affidavit or other evidence; (3) even if the search warrant was technically inaccurate it should be upheld; and (4) the investigating agents executed the warrant reasonably and in good faith. (Doc. 83.) The Government submitted evidence showing that Cantu-Madril's address of record in her Public Access to Court Electronic Records ("PACER") account is "Suite E" and that she has filed court documents in CM/ECF listing her business address as "Suite E." (Docs. 83-10; 83-13.) The government submitted additional evidence showing that the sole public entrance of the office had signs identifying it as "Suite E" and bearing Cantu-

---

[2] For purposes of clarification, the Court notes the undisputed fact that Suite D and Suite E are adjacent suites separated by locking double doors. (*See* Doc. 83.) It is also undisputed that the law offices of Cantu-Madril and Madril encompassed both Suites D and E at the time the search warrant was executed.

- 2 -

Madril's name. (Doc. 83-3.)

At oral argument on November 14, 2019, the Government called three witnesses: (1) Yazmin Salazar, an office manager who previously worked for Defendants (2) Steve Baquet, owner and landlord of the office building at 890 West Grant Road, from whom Defendants leased their office space; and (3) Homeland Security Investigations ("HSI") Special Agent Richard McDowell, who was partly responsible for obtaining and serving the search warrant. Defendant Cantu-Madril testified on her own behalf.

Ms. Salazar testified that she worked as the office manager (or secretary) for Madril and Cantu-Madril for approximately ten years. Ms. Salazar testified regarding the layout of the law office and Defendants' habits regarding their daily entry into the office. Ms. Salazar testified that both Madril and Cantu-Madril typically entered the office through the Suite E door, which was also the only way for the public to enter the law office. She testified that Cantu-Madril typically entered through the Suite E door and then entered Suite D, where her computer and work station were located, through the double doors. Ms. Salazar testified that the double doors typically remained open other than when Cantu-Madril was meeting with clients, at which time they would be closed but not locked. Ms. Salazar also testified to the existence of an additional entrance into the main hallway leading directly into Suite D and stated that Cantu-Madril sometimes, but not often, entered through that door.

Ms. Salazar testified that she performed office managerial duties for both Cantu-Madril and Madril, and that she was the sole office manager or secretary for both. She answered phones and booked appointments on behalf of both. She additionally testified that Madril and Cantu-Madril "shared" clients, worked on cases together, and shared filing cabinets. She testified that the office space, encompassing both Suites D and E, shared one waiting room with chairs and one copier/printer. She further testified that she received a single paycheck from Richard Madril.

Mr. Baquet testified that Cantu-Madril and Madril were jointly renting Suites D and E when the search warrant was executed. He testified that they paid rent for Suites D

and E together and that the lease agreement listed both Suite D and Suite E under both Defendants' names.[3] He further testified, and Defendant Cantu-Madril corroborated, that Cantu-Madril rented Suite A at 890 West Grant Road approximately ten or more years ago, before Defendant Madril obtained his law license. Once Defendant Madril obtained his law license, Defendants began jointly renting Suite E, in approximately 2014. At that time, another business occupied Suite D. When the other business vacated Suite D, Defendants then began renting both Suites D and E together, in approximately September 2015.

**III.    Applicable Law**

The Fourth Amendment requires that a search warrant, in addition to being supported by probable cause, must "particularly describ[e] the place to be searched." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The test for "determining the sufficiency of the warrant description is whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any probability that another premise might be mistakenly searched." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985.) A court should assess a search warrant in a "common sense and realistic" manner, as opposed to a "hypertechnical" interpretation. *Id.* at 1510. Slight discrepancies do not necessarily justify suppression where there is no danger that the wrong place might be searched as a result of the inaccuracy or imprecision, because the purpose of the particularity requirement is to prevent "general" or "wide-ranging exploratory" searches. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The validity of an overbroad warrant "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Garrison*, 480 U.S. at 88. In other words, if the objective facts available to the officers at the time suggested "no distinction" between the place to be searched pursuant to the warrant and the area that was allegedly unlawfully searched, then the search is valid. *Id*.

---

[3] Baquet was not able to produce the lease agreement, but neither Defendant disputed his statements.

### IV. Analysis

In asking the Court to find that the warrant's identification of "Suite E" as the place to be searched violated the Fourth Amendment's particularity requirement, Defendant Cantu-Madril essentially asks the Court to apply a "hypertechnical" interpretation to the warrant. *Turner*, 770 F.2d at 1510. The Court declines to do so, as such an interpretation would be flawed. *See id.*

Furthermore, in asking the Court to find that the agents unreasonably and unlawfully expanded the scope of the warrant when they searched Suite D, Defendant asks the Court to find that the facts available to the agents at the time suggested a distinction between Suite E and Suite D. *See Garrison*, 480 U.S. at 88. Based on the evidence before it, the Court declines to make such a finding. The objective facts available to anyone at the time the warrant was obtained—including the officers who served the warrant—suggested no distinction between Suite D and Suite E. The officers intended to search the "law office of Marivel Cantu-Madril" and, after reasonable investigation, they obtained and executed a warrant for that purpose. There was no danger that the wrong place might be searched as a result of any inaccuracy in the warrant. The description in the search warrant of the place to be searched, and the agents' subsequent search of both Suites D and E, were permissible within the meaning of the Fourth Amendment.

**IT IS ORDERED** that Defendant Marivel Cantu-Madril's Motion to Suppress (Doc. 81) is **denied**.

Dated this 18th day of November, 2019.

_____
Honorable Rosemary Márquez
United States District Judge