**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01309-001-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| Marivel Cantu-Madril - 001<br>Richard A. Madril - 002, | |
| Defendants. | |

Pending before the Court are Defendant Marivel Cantu-Madril's Motion for a New Trial (Doc. 143) and Defendant Richard Madril's Motion for Acquittal or New Trial (Doc. 144). The Court granted Defendants a 30-day extension of the deadline for filing the motions. (Doc. 142.) The United States responded to the Motions (Doc. 145) and Defendants replied (Docs. 151, 152.) For the reasons set forth below, the Court will deny both motions.

### I.  Procedural History

On January 16, 2019, a grand jury returned a superseding indictment charging Defendants Cantu-Madril and Madril with conspiracy. (Doc. 28.) The indictment also charged Defendant Cantu-Madril with one count of mail fraud, one count of wire fraud, two counts of forgery of judicial signatures, and four counts of possession of counterfeit seals of agencies of the United States. (*Id.*) The wire fraud and two counts of possession

of counterfeit seals of agencies of the United States were dismissed before trial. (Docs. 114, 116.) Trial began on December 3, 2019. (Doc. 116.) On December 6, 2019, the jury returned a verdict of guilty as to Defendant Madril on the conspiracy charge. (Doc. 124.) The jury returned a verdict of guilty as to Defendant Cantu-Madril on the conspiracy charge, two counts of forgery of judicial signatures, and three counts of possession of counterfeit seals of agencies of the United States, and not guilty as to the mail fraud charge. (Doc. 123.)

## II. The Parties' Arguments

In her Motion for a New Trial, Defendant Cantu-Madril presents three arguments: (1) the Government failed to present sufficient evidence to support the conspiracy conviction; (2) the prosecutor improperly vouched for the Government's witnesses; and (3) the Government failed to provide evidence of the Court's subject matter jurisdiction. (Doc. 143.) Defendant Cantu-Madril challenges only her conviction on the conspiracy charge. (*Id*. at 6.)

Cantu-Madril argues that the Government did not present evidence that Cantu-Madril and Madril conspired to create false court documents. (*Id*. at 2-3.) Cantu-Madril additionally argues that the prosecutor's statements during closing argument constituted impermissible vouching for the Governments' witnesses' credibility. (*Id*. at 3-6.) Specifically, Cantu-Madril points to the following exchange:

> **Mr. Sullivan**: And as you just heard a few minutes ago, the Judge instructed you about how to judge the believability or the truthfulness of a witness. I submit to you that the victims in this case were extremely truthful and their testimony was very compelling.
> **Mr. Willimann**: Objection, your Honor.
> **The Court**: Sustained.
> **Mr. Willimann**: Thank you.
> **Mr. Sullivan**: Let's discuss the victims' testimony. You got to see them with your own eyes, hear them with your own ears, and judge them for yourselves, and I submit to you that they were forthright, they were straightforward—
> **Mr. Willimann**: Objection, Your Honor.
> **The Court**: Counsel, I'll see you at sidebar. (At

>sidebar.)
>**The Court**: I sustained the objection as to vouching for their truthfulness to the jury.
>**Mr. Sullivan**: Okay. Yeah, in other places when I proceeded by saying, "I submit," that's often unacceptable? But now understanding that we can't do that here, in the District of Arizona, I will do it differently.
>**The Court**: I don't think it's different for the District of Arizona. In all the states where I have practiced it's always been improper for prosecutors, and lawyers in general, to vouch for somebody's credibility, especially during closing. I guess the way you did it was fine, except that when you say that the final—when you're talking about initial part was fine, but in your last sentence…

(*Id*. at 3-5, Doc. 150 at 4-6.) No party requested that a curative instruction be given to the jury after defense counsel's objections were sustained. Defendant Cantu-Madril contends that the prosecutor's statements vouching for the credibility and truthfulness of the government witnesses impermissibly affected the jury because it happened twice. Defendant requests a new jury trial on the conspiracy count. (Doc. 143 at 6.)

Cantu-Madril's final argument is that the Government failed to present evidence to establish beyond a reasonable doubt the Court's jurisdiction over the case because it did not show that "Cantu-Madril's criminal conduct occurred within this Court's jurisdiction." (*Id*. at 6-7.)

In his Motion for Acquittal or a New Trial, Defendant Madril presents two arguments: (1) the jury's verdict was against the weight of the evidence and (2) the Government improperly vouched for the credibility of its witnesses. (Doc. 144.) Defendant Madril was convicted of conspiring with co-defendant Cantu-Madril to commit at least one of the other crimes alleged in the indictment. (*Id*. at 2.) Madril argues that the Government did not provide evidence to show that Madril "had any agreement" with Cantu-Madril to commit any crimes or that he "knew of a conspiracy" to forge court documents. (*Id*. at 3.) Madril, however, admits that (1) he covered a hearing for one of Cantu-Madril's clients and (2) government witness Pinon-Navarro testified that Madril

impersonated a federal officer over the telephone. (*Id.*) Madril contends that the testimony of Pinon-Navarro was undermined or not credible because (1) Pinon-Navarro had never spoken with Madril and (2) another witness, Calzadillas, admitted to impersonating federal officers over the phone at Cantu-Madril's request. (*Id.* at 3-4.) Defendant Madril goes on to address the testimony of government witness Ordonez-Leon, who testified that Madril was present when Cantu-Madril gave Ordonez-Leon a fake order and that Madril told Ordonez-Leon not to attend his next court hearing. (*Id.* at 4.) Madril contends that Ordonez-Leon's testimony was "so replete with inconsistencies that no rational trier of fact could give it credence" and points out specific portions of the testimony that he argues are inconsistent with other testimony and evidence in the case. (*Id.* at 4-5.)

Madril's second argument for acquittal or a new trial is that the Government improperly vouched for the credibility of its witnesses during closing argument. (*Id.* at 6); *see supra* at 2-3. Madril contends that the vouching statements rose to the level of error because two objections were made by defense, the Government's case was weak, no curative instruction was given, and the statements prejudiced Madril. (*Id.* at 7.)

The Government opposes the Motions as to both defendants. (Doc. 145.) The Government contends that the evidence presented at trial was legally sufficient to support the conspiracy convictions when viewed in the light most favorable to the prosecution. (*Id.* at 3-7.) It argues that the jury's verdicts also comported with the weight of evidence and that the interest of justice supports upholding the verdicts. (*Id.* at 8-9.) The Government further argues that statements made during closing argument in which the prosecutor vouched for the credibility of government witnesses did not rise to the level of error warranting acquittal or a new trial. (*Id.* at 9-12.) It contends that the statements in question were not improper vouching, and even if they were, it was "mild vouching" that did not prejudice the defendants. (*Id.* at 11.) Finally, the Government dismisses Cantu-Madril's argument regarding subject matter jurisdiction as "frivolous" and contends that it properly established both jurisdiction and proper venue for the prosecution. (*Id.* at 12-

15.)

## III. Applicable Law and Analysis

### a. Sufficiency of the Evidence

The court must enter a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). If the motion for judgment of acquittal is post-trial and the jury has already returned a guilty verdict, the court may set aside the verdict and enter an acquittal. Fed. R. Crim. P. 29(c)(2).

"There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The court must resolve questions of witness credibility consistent with the jury's verdict. *United States v. Leung*, 35 F.3d 1402, 1405 (9th Cir. 1994); *see also United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986) (where witness testimony was "contradicted in certain respects" yet found credible by the jury, the evidence was sufficient to support the conviction).

"Conspiracy, by its nature, requires the government to prove that at least two persons had an agreement to commit the underlying offense." *Lennick*, 18 F.3d at 818. An agreement "may be inferred from the defendant's acts or from other circumstantial evidence." *Id*. "The agreement need not be explicit[.]" *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980); *see also United States v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018) ("The government does not need to prove the existence of an express agreement; a tacit agreement will suffice."). The jury need find only one overt act by a co-conspirator in furtherance of the conspiracy in order to convict all co-conspirators of conspiracy. *See Ocasio v. United States*, 136 S. Ct. 1423, 1428-29 (2016); 18 U.S.C. § 371. "[O]nce the existence of a conspiracy is established, 'evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the

conspiracy." *Melchor-Lopez*, 627 F.2d at 891. However, there can be no conviction for "guilt by association" with a conspiracy and "mere association with" or "simple knowledge [or] approval of" a conspiracy is not enough to make one a conspirator. *Id*.

"Upon the defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); see also Fed. R. Crim P. 29(d). The court's power to grant a motion for a new trial is "much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id*. at 1211. "If the court concludes that… the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," it may set aside the verdict and grant a new trial. *Id*. at 1211-12. A motion for a new trial "is directed to the discretion of the trial judge" and should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the Government proved the essential elements of conspiracy beyond a reasonable doubt. The government presented witnesses, including Pinon-Navarro and Ordonez-Leon, who testified that Cantu-Madril and Madril provided them with false documents, communicated false information about scheduled court hearings, and impersonated immigration officials in a manner that suggested coordination and communication between them. (*See* Doc. 131 at 146-74, Doc. 132 at 116-36.) Defendant Cantu-Madril's arguments contain no citations to the record and no analysis of why the witnesses' testimony could not have shown that Cantu-Madril and Madril agreed to commit the crimes alleged. (Doc. 143 at 2-3.) Defendant Madril's arguments, to the extent they assert that no evidence was presented to establish a conspiracy, are also unsupported by the trial record. (Doc. 144 at 3.) The government unquestionably presented evidence, in the form of witness testimony, of a tacit agreement between the

defendants.

Defendant Madril's arguments regarding the credibility of the witnesses likewise do not provide a basis for acquittal. The fact that certain portions of Pinon Navarro's and Ordonez-Leon's testimony could be viewed as incomplete or inconsistent is not sufficient to overcome the mandate that questions of witness credibility be resolved consistent with the verdict. Indeed, the inconsistencies and contradictions in the testimony that Madril points out are relatively insignificant and would not necessarily induce a rational trier of fact to find either Pinon-Navarro or Ordonez-Leon not credible. The minor inconsistencies in the testimony are not enough to show that no reasonable juror could have found the elements of conspiracy proven beyond a reasonable doubt.

The Court also finds that a new trial is not warranted. Even weighing the evidence and evaluating the credibility of witnesses for itself, the Court finds that the evidence in this case does not weigh so heavily against the verdict that a "serious miscarriage of justice" may have occurred. Accordingly, the Court finds that a rational trier of fact could have found that the Government proved beyond a reasonable doubt that Cantu-Madril and Madril conspired to commit at least one of the charged crimes. The Court declines to acquit defendants or order a new trial based on insufficient evidence.

### b. Prosecutorial Vouching

A prosecutor's remarks are reviewed under the harmless error rule "to determine whether it is more probable than not that the improper remarks materially affected the verdict." Fed. R. Crim. P. 52(a); *United States v. Prantil*, 764 F.2d 548, 556 (9th Cir. 1985). A prosecutor's potentially improper remarks "must be examined within the context of the trial to determine whether the [] behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985). The essential issue is whether the prosecutor's statements affected the jury's ability to judge the evidence fairly. *Id*. There are two dangers inherent in prosecutorial vouching: first, "such comments can convey the impression" to the jury that the prosecutor has extra-record evidence supporting the charges against the defendant, and second, "the prosecutor's opinion carries with it the

imprimatur of the Government" and thus could improperly influence the jury's deliberations. *Id*. at 18-19.

"As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity or suggesting that information not presented to the jury supports the witness's testimony." *Id*. at 1276. "Vouching is especially problematic in cases where the credibility of the witnesses is crucial, and in several cases applying the more lenient harmless error standard of review, courts have held that such prosecutorial vouching requires reversal." *Id*. (quoting *United States v. Molina*, 934 F2d 1440, 1445 (9th Cir. 1991)). "At the same time, we have recognized that prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the sides is lying." *Id*. (citing *Prantil*, 764 F.2d 548 at 555 (a prosecutor's improper "assertions of personal knowledge" prejudiced the defendant and materially affected the verdict)).

Courts have considered a number of factors in determining whether prosecutorial vouching more likely than not materially affected the jury's verdict. *Id*. at 1278. These factors include: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall. *Id*. Courts "balance the seriousness of the vouching against the strength of the curative instruction and closeness of the case." *Id*.

The Ninth Circuit Court of Appeals has found that a prosecutor's statements beginning with "I submit" do not constitute vouching. *Id*. at 1279. In contrast to a

prosecutor's statements that included references to extra-record facts, implied personal knowledge of the circumstances of a witness's testimony, or provided a personal guarantee of a witness's veracity, arguments that a witness was telling the truth are not considered vouching. *Id*. Such statements "do not imply that the government is assuring [a witness's] veracity, and do not reflect the prosecutor's personal beliefs." *Id*.; *but see United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (reversal for plain error where prosecutor vouched multiple times for witness's candor and no objection was made). Prejudice resulting from improper prosecutorial statements can be remedied or reduced by a prompt response from the judge, such as an admonishment, or an objection from opposing counsel. *Young*, 470 U.S. at 13.

The prosecutor's remarks during closing argument regarding the witnesses' veracity, while clearly improper, were harmless error. Nothing in the record suggests or indicates that the prosecutor had extra-record knowledge supporting the conviction of the defendant or a capacity to monitor the witness's truthfulness, nor do the defendants argue such. Rather, the statements were general submissions to the jury of the witnesses' truthfulness. Other than drawing inferences or conclusions from the evidence presented at trial, the statements did not indicate the prosecutor's personal opinion of the testimony or provide a personal guarantee of the witnesses' veracity. Indeed, the Ninth Circuit Court of Appeals has found that "I submit" statements do not constitute vouching because, in order to convict a defendant, a prosecutor must argue that his witness is telling the truth. *Necoechea*, 986 F.2d at 1279.

Nevertheless, defense counsel immediately objected to the remarks and the objection was sustained. (Doc. 150 at 5-6.) A bench conference was held, and the judge admonished the prosecutor in front of the jury, saying, "it's always been improper for prosecutors, and lawyers in general, to vouch for somebody's credibility, especially during closing." (*Id*.) The Court provided the jury with standard instructions on what is not evidence, which specified that they were to consider only testimony and evidence in reaching their verdict and that "questions, statements, objections, and arguments by

lawyers are not evidence." However, no curative instruction specific to the improper statements was requested, and the Court did not provide one.

The Court's primary concern is whether the statements, which bore the imprimatur of the Government, unduly influenced the jury's ability to judge the evidence. Viewing the statements in the context of the entire four-day trial, the Court believes it is unlikely that the statements materially affected the verdict. The statements were made at the conclusion of a four-day trial during which the government presented significant evidence—including documentary evidence in addition to testimonial evidence—of the defendants' guilt. Although the evidence of guilt in this case is not as strong as that in *Young*, where the Court found "overwhelming evidence…established beyond any doubt" of the defendant's guilt, 470 U.S. at 19-20, the Court is satisfied that Cantu-Madril and Madril were convicted on sufficient evidence so that the prosecutor's closing remarks did not unduly prejudice the defendants or influence the jury. While the witnesses' testimony was important to the government's case, and Defendants did attack the witnesses' credibility on cross-examination, the improper statements during closing argument were minor in comparison to the witnesses' substantial testimony and the myriad opportunities the jurors had to judge witness credibility for themselves. Moreover, the Court is satisfied that the promptly sustained objections, followed by the immediate admonishment of the prosecutor in front of the jury, sufficiently mitigated any prejudice and rendered the statements harmless error. In balancing the seriousness of the vouching, which was minor, against the strength of the curative instructions and closeness of the case, the Court finds the prosecutor's statements were unlikely to have materially affected the jury's ability to judge the evidence fairly and reach a verdict based on that evidence. The Court declines to acquit defendants or order a new trial based on prosecutorial vouching.

### c. Jurisdiction and Venue

A criminal defendant has a constitutional right to be tried in the district in which the crime was committed. *United States v. White*, 611 F.2d 531, 534 (5th Cir. 1980). The Government bears the burden of establishing jurisdiction and proper venue in the district

of trial. *Id*. However, the reasonable doubt standard that applies to the substantive elements of the offense does not apply to jurisdiction and venue. *Id*. Rather, the prosecution must show only by a preponderance of the evidence that the trial is in the same district as the alleged criminal offenses. *Id*. "Circumstantial evidence in the record as a whole support[ing] the inference that the crime was committed in the district where venue was laid" is sufficient to establish venue. *Id*. at 534-35. "If the Government shows by a preponderance of the evidence that the crime was committed in the trial district, both territorial jurisdiction and proper venue are established." *Id*. at 535.

Cantu-Madril contends that "the government failed to have any witness with knowledge testify to the jury that this Court has subject matter jurisdiction to hear this matter." (Doc. 143 at 6.) Cantu-Madril mis-states the Government's burden to prove jurisdiction; the Government is required to prove jurisdiction by a preponderance of the evidence, not beyond a reasonable doubt. Furthermore, the Government is not required to have a witness testify as to jurisdiction. "Circumstantial evidence in the record as a whole" is enough. All of the evidence in the case shows that the alleged crimes and all events connected to the alleged crimes took place in Tucson, in Pima County. The defendants never challenged jurisdiction or venue during trial nor requested an instruction. The Court declines to order a new trial based on jurisdiction or venue.

Accordingly,

**IT IS ORDERED** that Defendant Cantu-Madril's Motion for a New Trial (Doc. 143) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Madril's Motion for a New Trial or Judgment of Acquittal (Doc. 144) is **denied**.

Dated this 26th day of February, 2020.

_____
Honorable Rosemary Márquez
United States District Judge

- 11 -